UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


FRED REEVES, JR.,

        Plaintiff,

v.

A. PEREZ, *et al.*,

        Defendants.

_____/

Case No. 4:04-CV-137

Hon. Gordon J. Quist

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is before the court on defendants' motion for summary judgment (docket no. 18).

        Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws.   *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). "[T]o state a claim under section1983, a plaintiff must allege two elements:  (1) a deprivation of rights secured by the 'Constitution and laws' of the United States, and (2) plaintiff must show that the defendant deprived him of this federal right 'under color of law.'"   *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988).

        Plaintiff alleges as follows:

        On 2-13-04, while being escorted to the shower area for a daily shake down/strip search, I was assaulted by Officers Slack and Perez who were twisting and bending my hands, fingers and wrist causing bleeding and nerve damage.  Sgt Imhoff was present and witnessed the assault and would not allow Officer Perez to escort me to my cell.  However, on the way back Officer Slack continued to assault

me.  After being placed back in my cell Sgt J. Grider told me "every time you come out of your cell you will be assaulted for your litigation.["]

Plaintiff's Compl. at ¶ V.  Plaintiff seeks compensatory and punitive damages.  *Id.* at ¶ VI.

## I.      Exhaustion

Defendants contend that plaintiff did not administratively exhaust all of these claims and that his complaint should be dismissed for failure to exhaust.  Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies.[1]  *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought.  *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741.  A district court must enforce the exhaustion requirement sua sponte. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir.) (1998).  The exhaustion requirement, while not jurisdictional, is mandatory and must be addressed in the first instance by the district court in all prisoner civil rights cases before the merits of the case are addressed.  *See Curry v. Scott*, 249 F.3d 493, 501 n.2 (6th Cir. 2001).

The prisoner has the burden of demonstrating exhaustion of his available remedies. *See Brown*, 139 F.3d at 1104.  A prisoner must allege and show that he has exhausted all available administrative remedies and should attach to his § 1983 complaint the administrative decision disposing of his complaint, if the decision is available.  *Id.*  In the absence of written documentation, the prisoner must describe with specificity the administrative proceeding and its outcome so that the court may determine what claims, if any, have been exhausted.  *Knuckles El v. Toombs*, 215 F.3d

---

[1] Plaintiff's claims are the types of claims that may be grieved.  *See* MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ E (prisoner may grieve "alleged violations of policy and procedure or unsatisfactory conditions of confinement").

640, 642 (6th Cir. 2000).  However, the district court is not required to hold evidentiary hearings on the issue of exhaustion or "spend a lot of time with each case just trying to find out whether it has jurisdiction to reach the merits."  *Id.*

Pursuant to MDOC Policy Directive 03.02.130, ¶ E, a prisoner may grieve "alleged violations of policy and procedure or unsatisfactory conditions of confinement."  Policy Directive 03.02.130 provides for a three-step grievance process.  The Policy Directives provide that a prisoner may bypass Steps I and II and file a Step III grievance if the matter involves "racial or ethnic discrimination and staff brutality or corruption."  *See* Policy Directive 03.02.130, ¶ R.   In the present case, plaintiff bypassed Steps I and II and filed his grievance at Step III, alleging "staff corruption."  *See* grievance attached to Compl. as Ex. A.  The MDOC reviewed the grievance on March 19, 2004, and advised plaintiff that, "[i]t has been determined your grievance can not be processed further by this office, because a grievance or an appeal of a grievance may not be processed if it is untimely and the grievant has not provided a valid reason for the delay (PD 03.02.130)."  Step III Response, attached to Compl. as Exh. A. The grievance was returned to plaintiff with no action taken by the MDOC.  *Id.*

Defendant contends that plaintiff's claim is unexhausted because he filed an untimely grievance and that the rejection of this grievance does not satisfy the exhaustion requirement of 42 U.S.C. § 1997e(a).  Under MDOC policy, grievances may be rejected as untimely.  *See* Policy Directive 03.02.130, ¶ G(4).  A prisoner cannot circumvent the exhaustion requirement by simply stating that "he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."  *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) (citing *Wright v. Morris*, 111 F.3d 414, 417 n.3 (6th Cir.. 1997)).  However, even if the MDOC

rejects a grievance as untimely, a prisoner who presents a grievance through one round of the grievance appeals process will be deemed to have exhausted the available administrative remedies pursuant to 42 U.S.C. § 1997e(a).  *See Thomas v. Woolum*, 337 F.3d 720, 733 (6th Cir. 2003).  In the present case, plaintiff filed his grievance directly at Step III.  The MDOC did not reject the grievance as improperly filed at Step III, but reviewed the grievance and returned it to plaintiff as untimely.  *See* Step III Response. There are no further "rounds" of grievance appeals through which the plaintiff can proceed.  Accordingly, plaintiff's grievance is exhausted for purposes of § 1997e(a).

## II.     Summary Judgment

Defendants have moved for summary judgment pursuant to Fed. R. Civ. P. 56(b). In *Copeland v. Machulis*, 57 F.3d 476, 478-79 (6th Cir. 1995), the court set forth the standard for deciding such a motion as follows:

> Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552-53, 2552-53, 91 L.Ed.2d 265 (1986).  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49, 106 S. Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986); *LaPointe*, 8 F.3d at 378.  The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.  *Anderson*, 477 U.S. at 252, 106 S. Ct. 2512.

*Id.* at 478-79.  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario*

*Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### A.    Eighth Amendment claim

Plaintiff alleges that defendants violated the Eighth Amendment's proscription against cruel and unusual punishment.  The Supreme Court has held that "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)); *see also Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993).  In analyzing plaintiff's claims, the court must examine whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson*, 503 U.S. at 6.  Courts evaluate the injury suffered, "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id*. at 7 (quoting *Whitley*, 475 U.S. at 321).  As the Sixth Circuit summarized in *Moore*: "To determine whether a claim of assault rises to a level of constitutional magnitude, a court must consider the reasons or motivation for the conduct, the type of force used, and the extent of the inflicted injury."  *Moore*, 2 F.3d at 700.

Courts must give deference to actions prison guards take to maintain prison discipline, as long as those actions are taken pursuant to a considered choice and not in bad faith or for no legitimate purpose. *Whitley*, 475 U.S. at 321-22.  "[Not every] malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9.  Consequently, where the use of some force is required to restore order, it does not violate the Eighth Amendment unless the force used is "repugnant to the conscience of mankind" or the force is used "maliciously and sadistically for the very purpose of causing harm." *Id*. at 9,10 (citations omitted).  In addition, a de minimis use

5

of force will not support an Eighth Amendment claim.  *See id.* at 9-10;  *Moore*, 2 F.3d at 700-01.

In the present case, plaintiff has failed to present probative evidence sufficient to defeat defendants' motion for summary judgment.  Specifically, there is no factual basis to support plaintiff's claim that defendants assaulted him on February 13, 2004. Plaintiff has presented copies of his medical records indicating numerous medical complaints made by him from January 28, 2004, through June 1, 2004.  *See* Exh. A attached to plaintiff's Brief in Opposition.  On February 12th, plaintiff filed a health care request stating that he was assaulted by guards on February 11th and that "both thumbs and arms are damaged."  *See* Exh. B-1 attached to plaintiff's Brief in Opposition. Plaintiff also requested refills of Gaviscon, lotion, and Tylenol.  *Id.*  On the morning of February 13, 2004, plaintiff was seen by a nurse regarding injuries allegedly sustained "two days ago." Exh. A-2. Plaintiff also complained that his thumb was swollen but better now, that his forearm was red, scratched and sore.  *Id.*  The nurse observed that plaintiff had a full range of motion in his hands and shoulders, with no edema or deformity observed in his right hand.  *Id.*  Plaintiff's forearm had a closed, clean abrasion 2 cm, in length and 5 cm in width.  *Id.*

Although plaintiff alleged that he was assaulted on February 13th, he made no request for medical treatment on February 13th or 14th and there is no evidence that he suffered any injury on that date.  *Id.*  In his response to the motion, plaintiff states that he was assaulted after his examination on February 13th and that the alleged bleeding "came from the scabs over the closed abrasions that the nurse had identified" during the earlier appointment.  Plaintiff's Brief in Opposition at 7.  Plaintiff also refers to a nurse's visit on February 14th "when he was instructed to follow the instructions from the February 13th nurse visit."  *Id.*  Contrary to plaintiff's contention, the medical records do not reflect a nurse visit on February 14th. *See* Exh. A-2.  In addition, MDOC

health care progress notes made after February 13th do not mention plaintiff's alleged injuries suffered on that date ("bleeding and nerve damage"). On February 15th, plaintiff had a medication renewal. *Id.* On February 16th, plaintiff complained of "jock itch" and unit staff denying him food. *Id.* at A-3. On February 17th, plaintiff sent a kite with three complaints or requests unrelated to his alleged February 13th injury: a request for the nurse's diagnosis at the earlier appointment on the 13th, a request for "what was documented on 1-22-04 & 2-2-04 re. Albuterol," and a request for Gaviscon which was sent to the pharmacy. *Id.* at A-3. On February 17th, plaintiff also sent a kite regarding "officers taking his tray too early." *Id.* at A-4. On February 19th plaintiff declined call-out for his nurse's appointment because his "jock itch" had resolved. *Id.* On February 23rd, plaintiff complained of having a damaged wrist and pain in the right arm and of eating glass that was in pudding. *Id.* Finally, at a physical examination on March 10th, plaintiff reported that he had daily pain in his right elbow and "that he sustained the injury after being handcuffed on Feb[ruary] 11th. *See* Exh. B-19. None of plaintiff's numerous communications with the MDOC health care system reflect the severe injuries allegedly sustained on February 13th.

Defendants Perez and Slack have submitted affidavits denying that they twisted or bent plaintiff's hands, fingers or wrists on February 13th. *See* Exhs. 1 and 3 attached to defendants' Brief. Both defendants acknowledge that they were part of a response team sent to plaintiff's cell on February 13th, that plaintiff was restrained and escorted to the shower module for a strip search, and that the unit records do not indicate that an incident occurred during the escort. *Id.* Both

defendants point out that no Critical Incident Report or misconduct ticket was written at that time. *Id.*

The medical records contain no evidence that plaintiff's hands, fingers and wrists were bent so forcefully as to cause "bleeding and nerve damage" on February 13, 2004, or that he sought treatment for any alleged injury suffered on that date. There is no evidence that plaintiff suffered even a minor injury on that date.  At a medical examination the next month, plaintiff attributed his right elbow pain to being handcuffed on February 11, 2004.  Given the absence of any medical record of this allegedly serious injury, no jury could reasonably find for plaintiff.  *See Anderson*, 477 U.S. at 252. Accordingly, defendants' motion will be granted with respect to plaintiff's Eighth Amendment claim.

## B. Retaliation claim

Finally, plaintiff appears to allege a retaliation claim, based upon defendant Grider's statement that "every time you come out of your cell you will be assaulted for your litigation."  A retaliation claim includes three elements:

> (1) the plaintiff engaged in protected conduct;  (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two--that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*,175 F.3d 378, 394 (6th Cir. 1999).  However, conclusory allegations of retaliation are insufficient to state a claim.  *See Kensu v. Haigh*, 87 F.3d 172, 175-76 (6th Cir. 1996); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999).[2]  "The inmate must allege more than his

---

[2] In this regard, at least one court has observed that retaliation claims are "prone to abuse" since prisoners can claim retaliation for every administrative decision they dislike. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983).

personal belief that he is the victim of retaliation." *Jones*, 188 F.3d at 325.  *See, e.g., Murray v. Unknown Evert*, No. 03-1411, 2003 WL 22976618, at *2 (6th Cir. Dec. 8. 2003) (mere allegation of the ultimate fact of retaliation is insufficient to state a cause of action); *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("a complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone").

       In the present case, plaintiff has made nothing more than a conclusory allegation of retaliation against defendant Grider.  In his response, plaintiff states that he had pending litigation against defendant Grider and that Grider had him assaulted for pursuing this litigation.  A bare allegation of malice does not suffice to establish a constitutional claim.  *See Crawford-El v. Britton*, 523 U.S. 574, 588 (1998); *McMillan v. Fielding*, No. 04-5745, 2005 WL 1389523, at *2 (6th Cir. June 7, 2005) (allegations that corrections officer was motivated to retaliate against prisoner in a disciplinary hearing because of a previous lawsuit, without more, are too attenuated to support a retaliation claim).   Accordingly, plaintiff's retaliation claim will be dismissed.

**Conclusion**

       For the reasons set forth above, defendants' motion for summary judgment (docket no. 18) will be **GRANTED.**   An order consistent with this opinion will be entered.


Dated:     August 24, 2005         /s/ Gordon J. Quist
                                GORDON J. QUIST
                                UNITED STATES DISTRICT JUDGE